WK/ABS:AE
F. #2018R00819

19-M-292

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

IGOR RADINOVSKIY and
ALEKSANDR RADINOVSKIY,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR AN
ARREST WARRANT
(18 U.S.C. § 371)

EASTERN DISTRICT OF NEW YORK, SS:

MICHELLE SPERRUGGIA, being duly sworn, deposes and states that she is a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between February 2009 and January 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY, together with others, did knowingly and willfully conspire to offer and pay kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, to persons to induce the referral of Medicaid beneficiaries to Sabe Ambulette Service, Inc. ("Sabe Ambulette"), for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under the Medicaid program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

(Title 18, United States Code, Section 371)

The source of your deponent's information and the grounds for her belief are as follows:

1. I have been an HHS-OIG Special Agent for approximately eight years. During my tenure with HHS-OIG, I have been involved in the investigation of numerous cases involving criminal health care fraud during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants and reviewed health care claims data, bank records, telephone records, medical records, invoices and other business records. I am familiar with the records and documents maintained by health care providers and the laws and regulations related to the administration of the Medicare and Medicaid programs and other health care benefit programs. I am currently assigned to investigate health care fraud violations, including schemes to defraud the Medicare and Medicaid programs.

2. HHS-OIG and other law enforcement agencies are investigating violations of criminal law by IGOR RADINOVSKIY, ALEKSANDR RADINOVSKIY and others. Specifically, the investigation involves violations of, among other things, conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2) by offering and paying health care kickbacks, in violation of 18 U.S.C. § 371.

3. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

4. Except as explicitly set forth below, in this Complaint I have not distinguished between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Because the purpose of this Complaint is to set forth only those facts

necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. Instead, I have set forth only those facts, in substance and in pertinent part, that I believe are necessary to establish probable cause for the issuance of an arrest warrant.

I. Background

    A. The Medicaid Program

5. The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare & Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"), was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were referred to as "beneficiaries."

6. Medicaid covered the costs of various medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were ambulette transportation services.

7. In order to bill Medicaid, providers were required to regularly certify, among other things, that the claimed services were provided in accordance with applicable federal and state laws and regulations, and the provider understood that payment of the claims were from federal, state and local public funds.

8. Medical providers and suppliers were authorized to submit claims to Medicaid only for services that were medically necessary and not induced by payment of a kickback.

9. Ambulette companies provided transportation services for beneficiaries in non-emergency situations. Ambulette transportation services were covered by Medicaid. As with other medical providers, ambulette companies were required to apply for enrollment, be enrolled and revalidate that enrollment in order to submit claims for reimbursement to Medicaid.

10. Title 42, United States Code, Section 1320a-7b(b)(2) provides in relevant part:

> Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program

shall be guilty of a felony.

11. The Medicaid program is a "Federal health care program," as defined by Title 42, United State Code, Section 1320a-7b(f).

B. <u>Defendants and Related Entity</u>

12. Sabe Ambulette Service, Inc. ("Sabe Ambulettte"), which also did business as "Mobility Transportation," was a New York corporation located at 701 Hilda Street, North Bellmore, New York, among other locations.

13. Sabe Ambulette submitted claims to Medicaid as if it transported beneficiaries to medical clinics located throughout Brooklyn and as if those transportation services were medically necessary, provided by a licensed Medicaid provider and not induced by remuneration.

14. The defendant IGOR RADINOVSKIY was the president and an owner of Sabe Ambulette. The defendant ALEKSANDR RADINOVSKIY was IGOR RADINOVSKIY's son as well as a vice president and owner of Sabe Ambulette.

C. <u>Co-conspirators and Related Entities</u>

15. Co-conspirator-1 ("CC-1"), an individual whose identity is known to me, owned and operated multiple companies (collectively referred to as the "CC-1 Companies") that transported patients to clinics in Brooklyn, New York. The CC-1 Companies were not licensed ambulette companies and were not enrolled in Medicaid.

16. Co-conspirator-2 ("CC-2"), an individual whose identity is known to me, owned and operated multiple companies (collectively referred to as the "CC-2 Companies") that transported patients to clinics in Brooklyn, New York. The CC-2 Companies were not licensed ambulette companies and were not enrolled in Medicaid.

II. <u>The Kickback Scheme</u>

17. Between approximately February 2009 and at least January 2016, the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY, together with

5

others, including CC-1 and CC-2, did knowingly and willfully conspire to offer and pay illegal health care kickbacks.

18.     Law enforcement officers have interviewed CC-1 on several occasions between March 2018 and the present. During these interviews, CC-1 stated, in substance and in part, that CC-1 had an illegal kickback arrangement with the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY. Among other things, in sum and substance, CC-1 stated the following:

(a)     CC-1 delivered patients to various clinics using his own drivers. CC-1 and the drivers who worked for him were not enrolled in Medicaid and could not bill Medicaid themselves.

(b)     Sabe Ambulette billed Medicaid for the transportation services that CC-1, and others working for CC-1, performed. Sabe Ambulette kept approximately 15% to 20% of the proceeds it received from Medicaid, and paid the remainder to the CC-1 Companies.

19.     Law enforcement officers, including me, have interviewed CC-2 on several occasions between November 2017 and the present. During these interviews, CC-2 stated, in substance and in part, that CC-2 had an illegal kickback arrangement with the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY. Among other things, in sum and substance, CC-2 stated the following:

(a)     CC-2 did not have his own ambulette license.

(b)     Sabe Ambulette billed Medicaid for the transportation services that CC-2 performed. Sabe Ambulette kept approximately 15% to 20% of the proceeds it received from Medicaid and paid the remainder to the CC-2 Companies. CC-2 discussed

how much Sabe Ambulette would pay with IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY.

(c) CC-2, together with others, recruited and paid patients they transported to various clinics, paying patients approximately $30 per clinic visit, using some of the money they received from Sabe Ambulette. CC-2 and other ambulette drivers were responsible for finding and recruiting their own patients to transport to clinics on behalf of Sabe Ambulette.

20. The description of the scheme provided by CC-1 and CC-2 was corroborated by bank records, Medicaid records and data, and other records.

21. I and other law enforcement officers have reviewed various records received from financial institutions and have learned that:

(a) Between approximately 2008 and 2009, Sabe Ambulette paid the CC-1 Companies more than $1 million.

(b) Between approximately 2012 and 2016, Sabe Ambulette paid the CC-2 Companies more than $1 million.

22. I and other law enforcement officers have reviewed bank account records held in the name of Sabe Ambulette and I have learned that the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY were signatories on the bank accounts.

23. I and other law enforcement officers have also reviewed paperwork submitted to the New York State Medicaid program. On or about June 20, 2014, the defendant IGOR RADINOVSKIY signed revalidation forms on behalf of Sabe Ambulette with the Medicaid program. These forms did not disclose the relationship between Sabe

Ambulette and the CC-1 Companies and the CC-2 Companies. In fact, the signed revalidation forms stated, among other things, that Sabe Ambulette did not use subcontractors.

24. Based on my review of Medicaid claims data for Sabe Ambulette, I have learned that between approximately February 2009 and February 2018, Sabe Ambulette billed Medicaid and was paid approximately $45 million for ambulette services.

25. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY engaged in a conspiracy to offer and pay health care kickbacks, in violation of Title 18, United States Code, Section 371.

26. Accordingly, I respectfully request that the Court issue a warrant for the arrest of the defendants IGOR RADINOVSKIY and ALEKSANDR RADINOVSKIY so that they may be brought before the Court and dealt with according to law.

27. It is further respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the instant complaint and application and related arrest warrant. The defendants are

currently at liberty, and it is respectfully submitted that sealing these documents is necessary to prevent the defendants from avoiding arrest and prosecution.

MICHELLE SPERRUGGIA
Special Agent, United States Department of
Health and Human Services

Sworn to before me this
1st day of April, 2019

THE HONORABLE ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK